VETERANS OF SEVENTH REGIMENT *v.* FIELD OFFICERS OF SEVENTH REGIMENT *et al.*

(*Supreme Court, Special Term, New York County.*   April 2, 1889.)

INJUNCTION—LEASE OF ARMORY—LEGALITY.

    The permission given by the Seventh regiment to the organization called "The Veterans" of that regiment to exclusively occupy, subject to the military necessities, a room in the armory, the lease of which from the city provides that it shall be null and void if the premises are used for any other than the purposes of an armory and drill-rooms, or the public purposes of the regiment, is of doubtful legality; and therefore an injunction will not be granted to restrain the regimental officers from interfering with such use and occupancy.

At chambers.

*Glover, Sweezey & Glover* and *Asa B. Gardner,* for plaintiffs.   *Frederick R. Coudert* and *Charles E. Lydecker,* for defendants.

O'BRIEN, J.   By this motion it is sought to continue *pendente lite* an injunction restraining the defendants from interfering with the exclusive use and enjoyment of the room in the Seventh regiment armory building known as the "Veterans' Room."   Plaintiffs claim that by reason of an agreement made and guaranty given by the officers of the regiment, and their formal induction into and exclusive possession of the room for nearly 10 years, and their performance of the agreement, they are entitled to continue undisturbed in their original exclusive occupation for the period of the leases from the city to the regiment, subject, however, to the general rules governing the building, and the laws relating to armories.   Although no sublease of the room was executed, it must be concluded that, so far as resolutions, acts, and assurances could evidence the purpose and intent of the regiment, it did originally appropriate and set apart the room for the exclusive use of the veterans.   It is to be regretted that any question should have arisen leading plaintiff to appeal to the courts, thus risking a severance of the good feeling, harmony, and accord which in the past has done much to build up and strengthen a regiment which is to-day a municipal pride.   Stripped of all sentiment and verbiage, what is the question now dividing the parties?   On the part of plaintiff it is conceded that its use and enjoyment of the "Veterans' Room" is subject not only to the general rules governing the building and the laws relating to armories, but it is also subordinate to the military necessities of the regiment.   On the part of the defendants, the colonel and field-officers of the regiment, it is asserted that it is not the intent or desire to disturb the enjoyment of the "Veterans' Room" by the Veterans' Association, except to the extent of making their tenure consistent with the laws of the state and the necessities of the regiment.

These views are so nearly consonant, presenting more a question of military etiquette or precedence than of either law or equity, that it is evident no difference between the "Veterans" and actives would have arisen were it not for the position taken under legal advice by the trustees of the armory fund for the bondholders,—that the action of the officers was not only illegal, but

dangerous to the interest of the regiment and the rights of the bondholders, by permitting the exclusive use, occupation, and control of a part of the armory building by an organization other than the Seventh regiment.

That the bondholders are in no way endangered is clear from the offer, made by the plaintiff on the argument, that they were willing to take and pay for all the bonds. Leaving them out of consideration, therefore, it remains to determine whether the right so given to the Veterans was illegal, and whether a continuance thereof endangers the interest of the regiment. The lease from the city contained a covenant that it should be null and void if the premises were used for any other than the purposes of an armory and drill-rooms, or the public purposes of said regiment. Assuming even that the Veterans are a military organization, it is not claimed that they constitute the Seventh regiment, and it is, to say the least, doubtful if there was any power in the regiment or its board of officers to appropriate part of the premises received from the city to the exclusive use of another organization, military or civil. It is true with reference to private corporations, associations, or individuals, that they will not be permitted to shield themselves behind the defense of want of power, where they have been benefited, or against one who has been injured, relying in good faith on their acts or contracts. With regard to organizations or corporate bodies created for public purposes, the rule, I take it, is different. A public building cannot be diverted to private use. So, the whole or part of a building designated for military purposes should not be appropriated to other uses, and should be under a single authority. And, if we take plaintiffs' concession, who but the regiment, through its duly-constituted authority, is to determine when the necessities of the regiment require the use of the "Veterans' Room?" Again, assuming plaintiffs' contention that the building of the armory resulted from the creation and prosecution of a joint adventure, can that give them such rights as here claimed in property belonging to the city, upon which has been placed a public building to be devoted to a public use? When we consider that the land was given for a public use; that the building is a public one; the terms of the lease itself; the laws relating to armories; the tenor of the military regulations; and the public interests,—there springs up a grave doubt as to plaintiff's right to a permanent exclusive possession. While, therefore, the good faith and honor of the regiment are plighted to the Veteran Association,—for, with a belief in their power lawfully to grant the same, the regiment did give permission in terms as broad as claimed, and relying on which plaintiffs contributed to the building,—yet, in my view of the doubtful legality of the permission granted, upon which all plaintiff's legal and equitable rights depend, I am constrained to deny the motion; such relief being based on rights neither conceded, established, nor made certain. An injunction during the pendency of the action should not be continued. While, therefore, there was enough in the first instance to warrant the injunction, the facts now presented have inclined me to the conclusion here reached. Ordered accordingly.